# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                          Case No. 14-CR-86

**KRISTI MESICK**
        Defendant.

## DECISION AND ORDER

Before me is defendant Kristi Mesick's motion to suppress evidence seized from the basement of her apartment building. For the reasons set forth below, I deny the motion.

**I.**

### A. Procedural History

On February 4, 2014, the government charged Eugene Sweeney with robbery and weapons offenses. Sweeney moved to suppress evidence seized from the apartment he shared with Mesick (his girlfriend) and from the basement of their apartment building. On April 7, 2014, the magistrate judge handling pre-trial proceedings in Sweeney's case issued a recommendation that the motion be denied as to the evidence recovered from the apartment but granted as to the evidence seized from the basement.

On April 8, 2014, the government indicted Mesick on two counts of perjury, charging that she falsely testified before the grand jury investigating the robbery. On May 9, 2014, Mesick filed her own motion to suppress the evidence seized from the basement, as well as all statements she made as a result of the police obtaining that evidence. Mesick did not request an evidentiary hearing on her motion but rather relied on the facts developed in Sweeney's

case, arguing for suppression based on the "trespass" theory endorsed by the magistrate judge in Sweeney's case. (R. 11 at 1-2.)

The government objected to the recommendation in Sweeney's case, and on June 4, 2014, I scheduled a supplemental hearing. On June 10, 2014, Judge Stadtmueller stayed Mesick's case pending my ruling on Sweeney's motion, and I then granted Mesick's motion to reassign her case to me under Criminal Local Rule 13. On June 30, 2014, I held the supplemental hearing, and on July 24, 2014, I denied Sweeney's motion. At a status held on August 4, 2014, Mesick indicated that she had nothing further to submit on her motion to suppress the evidence seized from the basement.

**B.    Facts**

The background facts are set forth in my previous decisions in Sweeney's case, which I incorporate herein by reference. (Case No. 14-CR-20, R. 24 at 2-3 & R. 28 at 2-3.) Summarized, after the robbery victim identified Sweeney as the culprit, the police went to his apartment building to locate him. Officers entered through the front door, which was propped open while someone moved, and proceeded to his unit. Mesick admitted the officers and consented to a search of the apartment. Another officer detained defendant as he exited the backdoor of the building. One of the officers then went down the back stairs from Mesick's apartment into the basement of the building to search the area. Along a wall running next to the steps the officer located a black plastic bag containing a pistol matching the gun used in the robbery.

Police officers returned to Mesick's apartment the next day and questioned her about the robbery, Sweeney's possible involvement, and the items found in the basement. The officers arrested Mesick and took her to the police station, where she was interrogated again,

including questions about the gun found in the basement. (R. 11 at 3.)

**II.**

For essentially the same reasons set forth in my decision in Sweeney's case, Mesick's motion must be denied. Based on the evidence presented at the June 30, 2014 hearing, Mesick cannot demonstrate a reasonable expectation of privacy in the basement, nor can she assert a trespass to that area of her building.

**A.**     **Expectation of Privacy**

A reasonable expectation of privacy is infringed when the defendant exhibits an actual or subjective expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable. United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006). In evaluating a defendant's privacy expectations, the court considers a variety of factors, including whether the defendant had a possessory interest in the place searched, whether she put the place to some private use, and whether she had a right to exclude others. See, e.g., United States v. Mitchell, 64 F.3d 1105, 1109 (7th Cir. 1995).

The lease executed by Sweeney and Mesick said nothing about use of the basement, for storage or any other purpose, and no portion of the basement was assigned to any particular unit. The building owner testified that while tenants may use the basement to do laundry they are not supposed to store property there; if management found property in the basement they would seek to have it removed. Sweeney's investigator, who took photos of the building, confirmed that the basement space was largely unused and contained no storage areas associated with particular apartments. Sweeney testified that while he believed tenants

had the right to store things in the basement, he never did so.[1]  He further testified that there was a lot of traffic coming through the building, including the basement.  For instance, he said that tenants had their friends and family over to use the coin-operated laundry facilities in the basement.  At another point, he said that the "public" had access to the basement.  Sweeney testified that he never asked these people if they had permission to be there, and he gave no indication that he ever sought to exclude others from the basement.[2]

In sum, the evidence showed that the basement was a truly "common" area.  Under these circumstances, Mesick had no legitimate expectation of privacy in the basement.  See, e.g., United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003); United States v. Hawkins, 139 F.3d 29, 32-33 (1st Cir. 1998); United States v. McGrane, 746 F.2d 632, 634-35 (8th Cir. 1984); see also Harney v. City of Chicago, 702 F.3d 916, 925 (7th Cir. 2012).[3]

**B.    Trespass**

Under the trespass theory endorsed in Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013), the court determines whether the police physically intruded on a constitutionally protected area ("persons, houses, papers, or effects") for the purpose of gathering evidence.  In determining whether an area is constitutionally protected, the court may look to curtilage law, see id. at 1415, considering the proximity of the area searched to the home, whether the area was included within an enclosure surrounding the home, the nature of the uses to which the area

---

[1] The record contains no evidence that Mesick stored property in the basement either.

[2] Nor is there any evidence that Mesick sought to exclude others from the basement.

[3] Regarding Mesick's claim in particular, I note that a defendant must show a privacy interest in both the seized good and the area where the good was found.  Mendoza, 438 F.3d at 795.  Mesick fails to show any privacy interest in the plastic bag containing the gun located by the police in the basement.

4

was put, and the steps taken by the resident to protect the area from observation by people passing by, United States v. Dunn, 480 U.S. 294, 301 (1987).

Here, the evidence showed that the basement was located two levels away from Sweeney and Mesick's second floor apartment, and that no portion of the basement was assigned for their use. While the basement was enclosed within the four walls of the building, the record contained conflicting evidence on whether the backdoor – the only way to get to the basement other than through individual apartments – was usually kept locked. Sweeney's investigator testified that the backdoor was locked when he visited the building, but he only went there twice. The landlord said that the backdoor was kept locked to the best of his knowledge, but he managed twenty properties and visited this one about once per month. Sweeney testified that at times the backdoor was locked and at times it was propped open, and I found that as a tenant for a year and a half he was in the best position to answer this question. I also noted that when the officers went to the building to locate Sweeney the front door was propped open. Sweeney further testified that the "public" had access to and went in the basement. Finally, there was no evidence that tenants regularly used the basement for storage or any other private activities (aside from laundry). In sum, the evidence showed that tenants did not use the basement for "intimate activity associated with the sanctity of [the] home and the privacies of life." Id. at 300 (internal quote marks omitted).

In her brief in support of the motion, Mesick argued that the Fourth Amendment's protection of "houses" should not be limited to single family dwellings. (R. 20 at 2.) I agree. In ruling on Sweeney's motion, I specifically noted that there may be cases where tenants in multi-unit buildings could assert a property right over areas outside their individual units, and that each case must be considered on its particular facts. (Case No. 14-CR-20, R. 28 at 8-9,

5

citing cases.) In this case, the evidence showed that the basement was an open, non-secured area, accessible to non-tenants, which was not supposed to be used for storage and contained no storage spaces assigned to particular apartments.[4]

Mesick also cited McDonald v. United States, 335 U.S. 451, 458-59 (1948) (Jackson, J., concurring), and United States v. Carriger, 541 F.2d 545, 550 (6th Cir. 1976), in support of her trespass claim, but those cases are easily distinguishable. In McDonald, the police forced their way into the defendant's rooming house by climbing through the landlady's window, then proceeded to his room and looked through a transom, observing what they believed to be criminal activity. In Carriger, the police entered a locked apartment building entrance door by guile, slipping inside as several workmen exited, then forced entry into one of the units. In the present case, the police entered through the propped open front door, then obtained consent to enter Sweeney and Mesick's unit. Justice Jackson himself recognized the difference:

> Doubtless a tenant's quarters in a rooming or apartment house are legally as well as practically exposed to lawful approach by a good many persons without his consent or control. Had the police been admitted as guests of another tenant or had the approaches been thrown open by an obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another's shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible.

---

[4]Mesick argued that a contrary ruling would afford tenants and condo owners less protection than owners of single family homes. (R. 20 at 4.) As I noted in Sweeney's case, judges have, in the wake of Jones and Jardines, considered whether patios, yards, and hallways could be considered curtilage of a particular unit. See, e.g., United States v. Jackson, 728 F.3d 367, 373-74 (4th Cir. 2013), cert. denied, 134 S. Ct. 1347 (2014); id. at 379-82 (Thacker, J., dissenting); United States v. Schmidt, 700 F.3d 934, 937 (7th Cir. 2012); United States v. Penaloza-Romero, No. 13-36, 2013 WL 5472283, at *7 (D. Minn. Sept. 30, 2013). For the reasons stated in the text, Mesick cannot show that the basement of her building was a constitutionally protected area.

6

Id. at 458 (Jackson, J., concurring).

Finally, Mesick noted that, even under the reasonable expectation of privacy test, some courts distinguished between an apartment building's main hallways and its non-public, secured common areas. The problem with this argument is that the evidence showed that the basement in Mesick's building was not a secured, resident-only common area. The backdoor was often open, the basement contained no other doors blocking entry, and Sweeney testified that the "public" had access to it.[5]

**III.**

For these reasons and those stated in my orders in Sweeney's case,

**IT IS ORDERED** that defendant Mesick's motion to suppress evidence (R. 11) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2014.

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

[5]Because the basement search did not violate Mesick's Fourth Amendment rights, I need not determine whether her subsequent statements constitute fruit of the poisonous tree. Mesick has filed a second motion alleging a violation of her Miranda rights, which will be addressed separately following a hearing.